Richard WELCH, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 05A02–0411–CR–953.

Court of Appeals of Indiana.

June 3, 2005.

Allen C. Mattson, Hartford City, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Richard P. Welch, was convicted of Battery as a Class C felony[1] and was determined to be an habitual offender.[2] Welch presents three issues upon appeal, which we restate as: (1) whether the trial court erred in limiting cross-examination of witnesses regarding the victim's violent character; (2) whether one of the predicate convictions supporting the habitual offender determination was a felony; and (3) whether the trial court violated the *Blakely* rule in sentencing Welch.

We affirm.

---

1. Ind.Code § 35–42–2–1(a)(3) (Burns Code Ed. Repl.2004).

2. Ind.Code § 35–50–2–8 (Burns Code Ed. Repl.2004).

The facts most favorable to the jury's verdict reveal that on June 14, 2003, Plenny Barkdull went to the home of Rebbeca and Danny Cushing in Blackford County. Barkdull went there to confront Welch because Barkdull's then wife had accused Welch of trying to rape her. Barkdull was unarmed but did approach Welch. As the two men argued and shouted obscenities at each other, Barkdull observed Welch pull a "shiny, silver thing" out of his back pocket. Transcript at 55. The object was a knife with a double-edged blade approximately five to seven inches in length. When Welch came at Barkdull with the knife, Barkdull struck Welch, knocking him to the ground. After Barkdull turned and began to walk away, Welch came at him with the knife again. Barkdull raised his arm to block the knife, but the blade pierced through Barkdull's arm.

As a result of this incident, on June 30, 2003, the State charged Welch with one count of battery committed by means of a deadly weapon. On June 20, 2003, the State further alleged that Welch was an habitual offender. Trial was held on November 19, 2003, at the conclusion of which the jury found Welch guilty of the battery charge. The following day, the jury was reconvened to hear evidence in the habitual offender phase of the trial. After presentation of evidence, the jury determined that Welch was an habitual offender. On January 26, 2004, the trial court held a sentencing hearing and ordered Welch to serve eight years upon the battery conviction. The trial court then enhanced the sentence by an additional twelve years based upon the habitual offender determination, for a total sentence of twenty years.

On February 25, Welch filed a motion to correct error. After a hearing held on March 29, 2004, the trial court on April 1, 2004, entered an order denying the motion. Welch filed a timely notice of appeal.

### Exclusion of Evidence

■ Upon appeal, Welch claims that contrary to the Indiana Rules of Evidence, the trial court "refused [his] examination of witnesses as to [Barkdull]'s character and also as to [Barkdull]'s violence toward his ex wife...." Appellant's Brief at 10. After quoting Evidence Rule 404 and Indiana Code § 35–41–3–2 (Burns Code Ed. Repl.2004),[3] Welch claims that he "sought to establish his defense via cross examination of the victim and through other examination of the victim and through other witnesses. The right to such confrontation is of constitutional proportion and must be allowed." Appellant's Br. at 11. After quoting two other cases, Welch simply concludes, "The [trial] [c]ourt should have allowed [Welch] to make his defense of self-defense by examination and cross-examination." *Id.* at 12.

■ The State responds first by claiming that Welch has waived his assertion by failing to properly present his argument upon appeal. *See* Ind. Appellate Rule 46(A)(8)(a). We agree with the State that Welch's argument is deficient in several respects. Welch does not cite to those portions of the transcript in which he claims the trial court erred. And although he cites several cases, he does not apply

---

**3.** This statute governs the defense of self-defense and reads in relevant part:

"A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary." I.C. § 35–41–3–2(a).

the law of those cases to the facts in this case. We would be within our discretion to waive this claim, but we prefer to address issues on their merits if possible. *See Howell v. State,* 684 N.E.2d 576, 577 n. 1 (Ind.Ct.App.1997).

As we discern Welch's argument, he claims that the trial court improperly limited his presentation of evidence regarding Barkdull's character. Before trial, the State moved in limine to prevent Welch from presenting evidence regarding specific acts of violence or aggression by Barkdull "unless the defendant ... can prove that [the act] was known to the defendant at the time" of the stabbing. Tr. at 32. Upon cross-examination of Barkdull, Welch's counsel asked, "How many times have you confronted [Welch] since [the stabbing incident]?" *Id.* at 70. The trial court sustained the State's objection. Soon thereafter, the trial court heard arguments on the admissibility of such evidence. The State argued that "[w]hat happened after the [stabbing] is clearly irrelevant." *Id.* at 75. Welch contended that Barkdull's behavior "is all part of the same character, make-up and structure of this witness and I can show this witness to be what he is." *Id.* The trial court concluded, "Mr. Welch's self-defense is what the facts were at the time he acted in self-defense. He cannot use facts that he did not know about later on [sic] to prove self-defense in this particular case." *Id.* at 75–76.

■ We first note that we review a trial court's decision regarding the admission or exclusion of evidence for an abuse of discretion. *Hook v. State,* 705 N.E.2d 219, 220 (Ind.Ct.App.1999), *trans. denied.* Welch cites Indiana Evidence Rule 404(a), which reads in pertinent part:

> "Character Evidence Generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> (1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same;
>
> (2) Character of victim. *Evidence of a pertinent trait of character of the victim of the crime offered by an accused,* or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor;
>
> (3) Character of witness. Evidence of the character of a witness, as provided in Rules 607, 608 and 609." (emphasis supplied).

Both Welch and the State also refer to the case of *Brand v. State,* 766 N.E.2d 772 (Ind.Ct.App.2002), *trans. denied.* In that case, the victim had slapped the defendant in the face. This led to a verbal confrontation between the two, culminating in an agreement to engage in a fistfight. Brand, however, changed his mind about the fight en route and began to run back to his house. The victim caught up with Brand in an alley and prepared to fight. After a brief scuffle, Brand shot the victim with a handgun. At trial, the court granted the State's motion in limine to prohibit Brand from introducing evidence that the victim was a member of a street gang and sold drugs. During the trial, defense counsel made an offer to prove that Brand would testify that the victim was a gang member, had offered to sell him a handgun, and had sold him drugs. Counsel further offered that a police officer would testify that the defendant was a known member of a street gang. The trial court affirmed its original ruling and excluded such evidence.

Upon appeal, the court noted the general rule that evidence of a person's character is inadmissible to prove action in conformity therewith. *Brand*, 766 N.E.2d at 779. After citing Evidence Rule 404(a), the court noted that subsection (a)(2) of this rule provides an exception to this rule. The court, however, contrasted evidence offered to prove that a person acted in conformity with their character with evidence used to "offer a glimpse into a defendant's mind at the time he acted in self-defense." 766 N.E.2d at 779.

"Introduction of specific acts to prove the defendant's state of mind would support the proposition that the defendant had a reasonable belief that deadly force was necessary. In contrast, introduction of specific acts as victim character evidence, as permitted by Rule 404(a)(2), would support the proposition that the victim was using unlawful force. These are two separate and distinct propositions, and in fact constitute separate elements of self-defense. Moreover, because the general exclusionary rule of Evidence Rule 404(a) applies only when character evidence is used for the purpose of proving action in conformity with his character, it is apparent that when character evidence is utilized for some other purpose, such as to show defendant's state of mind, the rule is inapplicable." *Id.*

In *Brand*, the defense proffered the evidence of the victim's character to prove Brand's state of mind at the time of the shooting, not to prove the victim's conduct. Therefore, the court addressed the admissibility of the evidence offered to show reasonable fear on the part of the defendant. *Id.* at 780. In doing so, the court observed, "the victim's reputed character, propensity for violence, prior threats and acts, *if known by the defendant*, may be relevant to the issue of whether a defendant had fear of the victim prior to utilizing deadly force against him." *Id.* (emphasis supplied). The court further observed that although a victim's threats or violence need not be directed toward the defendant, "the defendant must have knowledge of these matters at the time of the ... confrontation between the victim and the defendant." *Id.* (citing *Holder v. State*, 571 N.E.2d 1250, 1254 (Ind.1991); *Feliciano v. State*, 477 N.E.2d 86, 88 (Ind.1985)). The court concluded that Brand's proffered evidence was relevant to his state of mind and that it was reversible error for the trial court to have excluded such. *Id.* at 780–83.

In the case at bar, it is not entirely clear as to whether Welch desired to introduce evidence of specific acts by Barkdull in order to establish that Barkdull was using unlawful force or to establish Welch's state of mind to prove that he had a reasonable belief that force was necessary. *See Brand*, 766 N.E.2d at 779. Based upon the content of his appellate brief, however, we conclude that Welch is arguing the latter. Welch quotes extensively from that part of the *Brand* opinion wherein the court discussed that Brand's offered testimony was relevant to show the reasonableness of his fear or apprehension of the victim and to highlight his thought processes during the shooting. *See* Appellant's Br. at 11–12 (quoting *Brand*, 766 N.E.2d at 781). We therefore interpret Welch's claim as one that the trial court erred in excluding evidence relevant to his state of mind. We can find no cognizable claim with respect to any other error.

That being said, we conclude that the facts of the present case are unlike those in *Brand*. In that case, Brand had knowledge of the proffered evidence prior to the fatal shooting. 766 N.E.2d at 780–81. Here, the trial court specifically limited its ruling to incidents which occurred after the stabbing. Events which occurred after

the stabbing could not be relevant to Welch's state of mind or reasonable fear at the time of the stabbing. We further observe that the trial court did allow evidence regarding a 1994 incident in which Barkdull had struck Welch with a tricycle.[4] In summary, Welch has not demonstrated error with regard to the trial court's exclusion of evidence.

### Habitual Offender

Welch contends that the habitual offender determination is not supported by proper evidence. Specifically, he claims that one of the predicate convictions on which the determination was based is not a "felony" for purposes of the habitual offender statute. The question whether an offense is a felony for purposes of the habitual offender statute is a question of law. *See Cain v. State,* 594 N.E.2d 835, 842 (Ind.Ct.App.1992), *aff'd in relevant part on reh'g,* 599 N.E.2d 625. The habitual offender statute provides in part:

"(a) Except as otherwise provided in this section, the state may seek to have a person sentenced as a habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions.

\* \* \*

(g) A person is a habitual offender if the jury (if the hearing is by jury) or the court (if the hearing is to the court alone) finds that the state has proved beyond a reasonable doubt that the person had accumulated two (2) prior unrelated felony convictions.

(h) The court shall sentence a person found to be a habitual offender to an additional fixed term that is not less

than the presumptive sentence for the underlying offense nor more than three (3) times the presumptive sentence for the underlying offense. However, the additional sentence may not exceed thirty (30) years." I.C. § 35–50–2–8.

Further, Indiana Code § 35–50–2–1(b) (Burns Code Ed. Repl.2004) defines the word "felony" for purposes of the habitual offender statute:

"(b) As used in this chapter, 'felony conviction' means a conviction, in any jurisdiction at any time, with respect to which the convicted person *might have been imprisoned* for more than one (1) year. However, it does not include a conviction with respect to which the person has been pardoned, or a conviction of a Class A misdemeanor under section 7(b) of this chapter." (emphasis supplied).

In the present case, one of the predicate convictions supporting the habitual offender determination was Welch's February 24, 1987 Third Degree Burglary conviction in Tennessee. The State alleged that the crime was "committed on December 8, 1986 and based upon said conviction, on February 24, 1987, [Welch] was sentenced for a period of three years." Appendix at 8.1. According to Welch, this conviction is not a felony conviction because the plea agreement he signed in the Tennessee case reveals that he was sentenced to "3 yrs at 30%." *Id.* at 5.4 Thirty percent of three years is 328.5 days. Thus, Welch argues that by the terms of his plea agreement, he could not have been imprisoned for more than one year. The case law does not support Welch's contention.

In *McBrady v. State,* 459 N.E.2d 719 (Ind.1984), the defendant argued that

---

4. Upon questioning by the State, Barkdull testified that he struck Welch on that occasion because Welch tried to stab him then.

his 1968 conviction for theft was not a "felony" pursuant to I.C. § 35–50–2–1 because it was the result of a plea wherein he was sentenced to nine months. The court rejected the argument, stating that "[t]he determinative issue is whether the Defendant *might* have been sentenced to a term of imprisonment greater than one (1) year." *Id.* at 725 (emphasis in original). Because the controlling statute at the time of the defendant's conviction provided for the possibility of imprisonment for more than one year, the prior conviction was a felony within the meaning of the habitual offender statute. *Id. See also Johnson v. State,* 575 N.E.2d 282, 283 (Ind.Ct.App. 1991) (stating that our Supreme Court has consistently concluded that a conviction for theft constitutes a felony conviction for purposes of the habitual offender statute irrespective of the sentence actually imposed upon the defendant), *trans. denied.*[5]

Here, the evidence submitted by the State regarding Welch's 1987 Tennessee conviction reveals that he pleaded guilty to burglary in the third degree. We take judicial notice of the statute in question.

*See Stewart,* 688 N.E.2d at 1258. At the time of Welch's Tennessee conviction, burglary in the third degree was punishable by imprisonment for not less than three and, dependent upon the circumstances, up to fifteen years. Tenn.Code Ann. § 39–3–404 (West, WESTLAW through 1987, repealed 1989).[6] This meets the definition of "felony" for purposes of our habitual offender statute. *See McBrady,* 459 N.E.2d at 725; *Johnson,* 575 N.E.2d at 283; *see also Cain,* 594 N.E.2d at 842–43 (defendant's prior out-of-state convictions were Class D felonies under habitual offender statute because a sentence of more than one year was authorized). The fact that Welch might have received something akin to a suspended sentence does not affect our analysis. Indeed, the judgment of conviction from the Tennessee court states that the sentence imposed was "3 years." App. at 21.8. Welch's challenge of the 1987 Tennessee conviction therefore fails.

*Sentencing*

 In his brief, Welch cites *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531,

5. In *Stewart v. State,* 688 N.E.2d 1254, 1258 (Ind.1997), our Supreme Court noted that it is the length of the term of imprisonment that is important, not whether the crime is classified by the other jurisdiction as a felony or misdemeanor. However, we do not take this to mean that it is the length of the term of imprisonment which was actually served which is important; rather it is the term for which the convicted person *might* have been imprisoned. *See* I.C. § 35–50–2–1(b). This is the import of the holding in *Stewart,* wherein the defendant contended that one of the predicate convictions supporting his habitual offender determination was not a "felony." The defendant had pleaded guilty in Kentucky to possession of a handgun by a convicted felon, and the Kentucky statute in force provided that this crime was classified as a D felony. The *Stewart* court took judicial notice that the sentence for a D felony in Kentucky at that time was not less than one nor more than five years. *Id.* at 1258. The court held that this met the definition of a felony. *Id.*

6. This statute read in pertinent part as follows:

"(a)(1) Burglary in the third degree is the breaking and entering into a business house, outhouse, or any other house of another, other than dwelling house, with the intent to commit a felony.

(2) Every person convicted of this crime, on first offense, shall be imprisoned in the penitentiary for not less than three (3) years nor more than ten (10) years.

(3) Every person convicted of this crime, on a second or subsequent offense, shall be imprisoned in the penitentiary for not less than five (5) years nor more than ten (10) years.

(4) Provided, however, if the person convicted of this crime had in his possession a firearm at the time of the breaking and entering, he shall be imprisoned in the penitentiary not less than ten (10) nor more than fifteen (15) years."

159 L.Ed.2d 403 (2004), *reh'g denied,* —— U.S. ——, 125 S.Ct. 21, 159 L.Ed.2d 851. However, his argument on this matter is deficient. It consists in its entirety of the following two sentences, "[*Blakely*] abrogates the Indiana sentencing scheme of Court determined 'aggravators' for sentence enhancement. Apparently an 'exceptional' sentence imposed by the [trial] [c]ourt without factual intervention and determination by a Jury violates a Defendant's Sixth Amendment Right to Trial by Jury." Appellant's Br. at 12. Welch makes no reference to any specific aggravating factor which might have violated the *Blakely* rule, nor does he explain how, why, or to what extent he claims that *Blakely* abrogates our sentencing scheme. Again, we would be within our discretion to not consider this argument. *See* App. R. (A)(8)(a). Nevertheless we choose to review the merits of Welch's claim as best we can discern them. *See Howell,* 684 N.E.2d at 577 n. 1.

■ Our Supreme Court recently examined the impact of the *Blakely* holding upon Indiana's sentencing scheme in *Smylie v. State,* 823 N.E.2d 679 (Ind.2005). The court held that *Blakely* applies to our sentencing scheme and that "the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws."

*Id.* at 686; *see also Hill v. State,* 825 N.E.2d 432, 438 (Ind.Ct.App.2005). Though the *Blakely* rule is applicable, so is the exception to the rule. *See Hill,* 825 N.E.2d at 438. That is, the *Blakely* rule contains an explicit exception with regard to prior convictions used to enhance a sentence: "*Other than the fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 124 S.Ct. at 2536 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)) (emphasis supplied).

Welch's *Blakely* argument attacks only the four-year enhancement of his Class C felony conviction.[7] Our review of the trial court's sentencing statement reveals that the aggravating factor relied upon by the trial court in enhancing Welch's sentence was Welch's criminal record. Specifically, the trial court stated:

"Mr. Welch, according to the presentence investigation report that was filed, since 1984, approximately 20 years ago, not quite 20, but almost 20 years ago, your adult record according to this starts out on May the 3rd of 1984, so in the past 20 years, you've had four felony convictions,[8] two of those felony convictions for Battery and 11 misdemeanor convictions and also probation violations,

7. Indiana Code § 35–50–2–6(a) (Burns Code Ed. Repl.2004) provides that a person who is convicted of a Class C felony shall be imprisoned for a fixed term of four years, with not more than four years added for aggravating circumstances or not more than two years subtracted for mitigating circumstances.

8. Welch makes no claim that two of the prior felony convictions relied upon by the trial court to enhance his sentence also supported his habitual offender enhancement. The felonies which supported the habitual offender finding could not standing alone be relied upon as the aggravating factor of a prior

criminal record to enhance the sentence. *See McVey v. State,* 531 N.E.2d 458, 461 (Ind. 1988); *Darnell v. State,* 435 N.E.2d 250, 256 (Ind.1982). *But see Jones v. State,* 600 N.E.2d 544, 548 (Ind.1992) (holding that it is permissible for a trial court to consider the same prior offenses for both enhancement of the instant offense and to establish habitual offender status). Regardless, aside from the two felony convictions supporting Welch's habitual offender enhancement, the trial court here relied upon two other felony convictions and numerous misdemeanor convictions to enhance Welch's sentence.

as well, during that period of time. The Court finds that those are aggravating circumstances in this case that outweigh any mitigating circumstances. Mitigating circumstance is that you do have a daughter. The Court is aware of that, although not stated specifically in the presentence report, the Court does know you have a daughter and staying at your grandparents' home where you are caring for her. But the aggravating circumstances greatly outweigh the mitigating circumstances in this case because of your poor past conduct. The Court's going to accordingly sentence you for the Battery with a Deadly Weapon as a Class C felony to the basic sentence of four (4) years plus an additional four (4) years for the aggravating circumstances." Tr. at 289.

Thus, the trial court relied almost exclusively on Welch's criminal record, which in this case consisted of prior convictions, in order to enhance his sentence. There was no violation of Welch's Sixth Amendment right to a trial by jury as set forth in *Blakely* because the fact that a defendant has prior convictions does not have to be re-submitted to a jury. *See Teeters v. State,* 817 N.E.2d 275, 279 (Ind.Ct.App. 2004), *trans. denied.*

The judgment of the trial court is affirmed.

BAILEY, J., and MATHIAS, J., concur.